[Civ. Nos. 16709, 16755, 16756. First Dist., Div. One. May 23, 1956.]

LELAH MULLER, Respondent, v. WILLIAM MULLER, Appellant.

[Three cases.]

William Muller, in pro. per., for Appellant.

Charles Reagh for Respondent.

PETERS, P. J.—Plaintiff, Lelah Muller, former wife of defendant, William Muller, brought an action in San Mateo County to quiet title to certain property. According to the affidavit of service, personal service in that action was had on defendant in San Francisco on November 17, 1952. Growing out of this action the San Mateo Superior Court made three separate orders adverse to defendant. From these orders defendant, in propria persona, appeals. The three appeals have been consolidated. 1 Civil Number 16755 is an appeal from an order made by Judge Draper on October 13, 1954, denying defendant's motion to set aside a default judgment in the quiet title action. 1 Civil Number 16709 is from an order made by Judge Cotton on October 25, 1954, denying defendant's ''motion to set aside submission sua sponte and reopen cause for the reception of evidence.'' 1 Civil Number 16756 is an appeal from an order made by Judge Dematteis on December 29, 1954, denying defendant's motion ''to set aside default and to vacate default judgment coram non judice by way of collateral attack.'' Most of defendant's lengthy arguments on these appeals are highly technical and are dilatory in nature. All of them are without merit.

The original quiet title action was filed in May of 1952 in San Mateo County. In December of 1952 appellant applied

to the trial court and secured an extension to January 17, 1953, "within which to move" in that action. On January 16, 1953, defendant moved to quash the service of summons in the quiet title action mainly on the ground that at the time of service the papers were thrown at defendant by the process server while defendant was in attendance in the Municipal Court of San Francisco on an entirely different civil matter, and was, therefore, so it is claimed, exempt from service.

On March 23, 1953, respondent's attorney and appellant appeared before Judge Draper to argue about some demurrers in three actions appellant had brought against respondent involving the title to the property involved in the quiet title action. Appellant was then moving to have service of these demurrers set aside on the basis that such service had been made by registered and not by regular mail. At this hearing respondent's attorney, in open court and in the presence of appellant, complained that the county clerk had refused to enter appellant's default in the quiet title action. Appellant told the court that he had no copy of the complaint.* Judge Draper directed respondent's attorney to send appellant, by mail, a copy of the complaint and to wait 10 days before attempting to have the default entered. At the same time, unknown to appellant, Judge Draper entered a minute order that appellant was granted 10 days from the mailing date to file an answer or cross-complaint. Respondent's attorney avers that on March 23, 1953, he mailed a copy of the complaint in the quiet title action properly stamped and addressed to appellant, and that this was done in the presence of his office associate. The office associate corroborates respondent's attorney except that in his affidavit he refers to the mailed document as a "complaint in a divorce case."

On April 24, 1953, the motion to quash the service of summons in the quiet title action came before Judge Draper, and was denied. Immediately thereafter, in the presence of appellant, respondent's attorney requested the court to enter appellant's default. The judge told the attorney, in the presence of appellant, that he had the court's permission to request the county clerk to enter the default. Respondent's attorney immediately proceeded to the clerk's office, followed by appellant, and appellant's default was entered while appellant was standing nearby.

---

*Summons and a copy of this complaint were served on appellant on November 17, 1952, according to the affidavit of the process server.

On September 9, 1953, respondent's attorney sent a letter, properly stamped and addressed, to appellant informing appellant that the default had been entered, that the time to move to vacate the default would expire on October 24, 1953, and that if appellant would secure an attorney he, respondent's attorney, would recommend to his client that she consent to vacating the default. No answer was received.

On May 13, 1954, the quiet title action came on for hearing before Judge Dematteis on respondent's motion for judgment after default. At this hearing a deed to the property involved, signed by appellant, whose signature was identified by respondent, was introduced into evidence, and the respondent testified as to the circumstances under which it was signed. The deed had not been acknowledged, which was the reason for the quiet title action. On May 18, 1954, the court entered its judgment quieting title to the property involved, after finding the pertinent facts as set forth above. On September 21, 1954, which was four months after this judgment was entered, and a year and five months after appellant's default had been entered, appellant moved to set aside the default judgment on the grounds that service of summons was defective; that respondent had not mailed him a copy of the complaint; that the judgment was secured by extrinsic fraud, in that respondent's pleading and evidence were false, and that pertinent facts, known to respondent, had not been revealed to the court. Appellant claimed by affidavit that he had never received a copy of the complaint, and that he did not learn of the default until just after respondent took possession of the premises. Annexed to the motion is a verified answer and cross-complaint setting forth his version of the facts under which the deed was executed which, if true, would have been a defense to the quiet title action. Respondent's affidavit set forth the facts favorable to her.

The hearing of appellant's motion to vacate the default came on for hearing before Judge Draper on October 6, 1954. Appellant was permitted to file a counteraffidavit in which he challenged all of the basic facts already set forth, denying that he had been served, heard counsel ask for a default, heard the court tell respondent's counsel to have the clerk enter it, followed respondent's counsel to the clerk's office, and denied ever receiving the letter above mentioned from respondent's counsel. On October 13, 1954, Judge Draper

denied the motion to set aside the default by a memorandum decision finding that service had been properly made, and that appellant was in default. A formal order to this effect was entered October 14, 1954. From this order appellant has appealed—1 Civil Number 16755.

On October 18, 1954, appellant moved to set aside the submission of his previous motion to vacate, and to reopen the cause for further evidence, claiming that submission of the motion was against his will, that Judge Draper refused to permit him to present his case, and that the judgment was secured by extrinsic fraud. This motion came before Judge Cotton on October 25, 1954. At that time appellant attempted to peremptorily challenge Judge Cotton under section 170.5 of the Code of Civil Procedure. The challenge was denied. Judge Cotton then summarily denied the motion, and, after a heated exchange, ordered the bailiff to escort appellant from the courtroom. An appeal was taken from this order— 1 Civil Number 16709.

On November 26, 1954, the appellant filed a motion to set aside the default judgment. This motion was, of course, filed more than the six months' period prescribed by section 473 of the Code of Civil Procedure. This motion urged many grounds in its support, most of which were a rehash of points already set forth. This motion was heard by Judge Dematteis and, after extensive argument, was denied by him on December 29, 1954. An appeal was taken from that order of denial—1 Civil Number 16756.

In support of his various appeals appellant has filed briefs totaling over 200 pages, raising some 40 points of what are claimed to be points of law. Most of them involve factual matters that have been passed upon by the lower courts on conflicting affidavits. These need not be considered. The rulings of the trial courts on these issues are conclusive.

### Appeal 1 Civil Number 16755

The only real legal point raised by appellant on this appeal is that he was immune from service because when served he was in fact in attendance in the San Francisco Municipal Court as a suitor in other actions.

■ There can be no doubt that it is the rule in California that a nonresident of the state present in this state as a suitor or as a witness in an action pending here, is immune from service of process while present in this state for such purposes. (*Hammons* v. *Superior Court,* 63 Cal.App. 700 [219 P. 1037] ;

*Gerard* v. *Superior Court,* 91 Cal.App.2d 549 [205 P.2d 109] ; *Franklin* v. *Superior Court,* 98 Cal.App.2d 292 [220 P.2d 8].) This is a rule of general application which is based upon public policy independent of statute.

In the present case the main action was filed in San Mateo County, which was the county of the residence of the parties, and service was had on him in that action while he was attending the Municipal Court in San Francisco as a suitor.

██ ██ While the general rule above set forth as to nonresidents of the state also applies between counties where the county where the service is had is seeking to assert jurisdiction over a nonresident (see cases collected 42 Am.Jur. 127, § 146), the generally accepted rule is that where a person is served in a county where he is appearing as a suitor or as a witness in an action pending in his own county of residence, the reason for the rule exempting him from service does not exist, and the rule does not apply. ██ In other words, the general rule is predicated upon the fundamental rule of fairness that when a suitor or witness is attending a trial in a county or state other than his residence, he should not be required to submit to a forced jurisdiction that were it not for his attendance at the trial would not have jurisdiction. But where a person is served in an adjoining county in an action pending in his county of residence this element of forced venue does not exist. In such cases the courts, generally, have refused to apply the exemption and have held the service good. (*Mertens* v. *McMahon,* 334 Mo. 175 [66 S.W.2d 127, 93 A.L.R. 1285] ; *Massey* v. *Colville,* 45 N.J.L. 119 [46 Am.Rep. 754] ; *Fisher* v. *Bouchelle,* 134 W.Va. 333 [61 S.E.2d 305].) California, at least by dicta, has indicated that the immunity does not apply between counties. (*Page* v. *Randall,* 6 Cal. 32, 33.)

This exception to the immunity rule is based on common sense and fairness. ██ The rationale of the immunity rule is that witnesses and parties ought to be able to attend trials without the threat of being subjected to lawsuits away from the county of their residence. But where this reason does not exist the rule should not apply. ██ Where a quiet title action is commenced in San Mateo County, the county of the residence of the parties, and the realty is located there, no possible legal reason exists for granting immunity to that defendant from service while such defendant is attending a court hearing in San Francisco.

Appellant next points out that the office associate of respondent's counsel avers that a complaint in a "divorce case" was mailed by respondent's counsel to appellant, and contends that this conclusively establishes that there was no compliance with the minute order requiring a copy of the complaint in the quiet title action to be mailed to appellant. The affidavit of respondent's attorney is clear and unambiguous to the effect that a copy of the complaint in the quiet title action was mailed to appellant. This affidavit, which the trial court found to be true, supports the finding of compliance with the order.

Appellant next objects to the fact that respondent's attorney did not file an affidavit of mailing the complaint ordered mailed by Judge Draper. The point is without merit. Jurisdiction was secured over appellant by the personal service of the summons and complaint in San Francisco, not by the later mailing of another copy to appellant. If it were a condition precedent to the entry of the default that such complaint be mailed, the proof of such fact could be made orally as well as by an affidavit of mailing. It is the fact of service and not how such fact is proved that confers jurisdiction. (*Herman* v. *Santee*, 103 Cal. 519 [37 P. 509, 42 Am.St.Rep. 145]; *Drake* v. *Duvenick*, 45 Cal. 455.)

It is next urged that the default judgment was secured by extrinsic fraud and therefore should be set aside. Of course, if the judgment was so secured the six-month limitation in section 473 of the Code of Civil Procedure is not applicable. (*Miller* v. *Cortese*, 110 Cal.App.2d 101 [242 P.2d 84]; *People* v. *One 1941 Chrysler Sedan*, 81 Cal.App.2d 18 [183 P.2d 368].) The fraud here alleged is that the allegations in the complaint in the quiet title action of respondent, and her testimony at the hearing were false and perjured, and that respondent failed to inform the court at that hearing that there were then pending three actions filed by appellant involving title to the property. These are classical charges of intrinsic and not extrinsic fraud. (*Pico* v. *Cohn*, 91 Cal. 129 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336]; *La Salle* v. *Peterson*, 220 Cal. 739 [32 P.2d 612]; *Westphal* v. *Westphal*, 20 Cal.2d 393 [126 P.2d 105]; *Chung Gee* v. *Quan Wing*, 103 Cal.App.2d 19 [229 P.2d 50]; *Hammell* v. *Britton*, 19 Cal.2d 72 [119 P.2d 333].) Appellant, as already held, was validly served with process, and had been informed that his default was to be taken if he did not file his answer. Respondent did nothing to prevent him

from defending the action. Thus, the motion to vacate was properly denied.

## Appeal 1 Civil Number 16709

This appeal is from an order denying a "motion to set aside submission sua sponte and reopen cause for the reception of evidence." In form and effect the motion was one asking the court to reconsider the denial of the previous motion. In support of this motion it is argued that appellant did not submit the motion previously denied, was prevented from arguing it, and was prevented from presenting oral evidence in support of it. ██ It is, of course, the law, that a trial judge is not required to listen to oral arguments in support of a motion, but may, in his discretion, decide it solely on the basis of the supporting affidavits. (*Morel* v. *Simonian,* 103 Cal.App. 490 [284 P. 694]; *Collins* v. *Nelson,* 41 Cal.App.2d 107 [106 P.2d 39]; *People* v. *Carpenter,* 3 Cal.App.2d 746 [40 P.2d 524].) ██ It is equally clear that the trial court may refuse to listen to oral testimony and may decide the case on affidavits alone. (Code Civ. Proc., § 2009; *Cowan* v. *Cowan,* 72 Cal.App.2d 868 [166 P.2d 21].)

██ Thus, the motion now under consideration was not only without merit, but obviously frivolous. Under such circumstances, the trial court acted well within its powers in summarily denying it.

██ In connection with this motion appellant attempted to peremptorily challenge Judge Cotton, purporting to act under section 170.5 of the Code of Civil Procedure. There was no charge of bias. That section, insofar as it deals with a peremptory challenge, has been held to be unconstitutional. (*Austin* v. *Lambert,* 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849]; *Daigh* v. *Shaffer,* 23 Cal.App.2d 449 [73 P.2d 927]; *Bulcke* v. *Superior Court,* 14 Cal.2d 510 [94 P.2d 1006].)

## Appeal 1 Civil Number 16756

This is an appeal from a denial of appellant's motion to "set aside default and to vacate default judgment *coram non judice* by way of collateral attack." While such an attack, in a proper case, may be made collaterally on a judgment more than six months after its entry (*Wells Fargo & Co.* v. *City & County of San Francisco,* 25 Cal.2d 37 [152 P.2d 625]; *Henderson* v. *Henderson,* 85 Cal.App.2d 476 [193 P.2d 135]; *Moran* v. *Superior Court,* 35 Cal.App.2d 629 [96 P.2d 193]), on such collateral attack there is a presumption that the judgment is valid, that is, that the court had juris-

diction of the person and subject matter. ■ Thus, the person relying on a judgment need not plead or prove the jurisdictional facts. (Code Civ. Proc., § 1963, subd. 16; *Fletcher* v. *Superior Court,* 79 Cal.App. 468 [250 P. 195]; *In re Eichhoff,* 101 Cal. 600 [36 P. 11].) ■ The burden rests on the person attacking the judgment to show lack of jurisdiction. ■ In showing lack of jurisdiction, in a collateral attack, the challenger, at least as to domestic judgments, is limited to the judgment roll, and may not show lack of jurisdiction by evidence outside the judgment roll. (*Kaufmann* v. *California Mining etc. Syndicate,* 16 Cal.2d 90 [104 P.2d 1038]; *Estate of Wise,* 34 Cal.2d 376 [210 P.2d 497]; *Hogan* v. *Superior Court,* 74 Cal.App. 704 [241 P. 584]; *Phelan* v. *Superior Court,* 35 Cal.2d 363 [217 P.2d 951].) ■ Under section 670 of the Code of Civil Procedure the judgment roll, where defendant fails to file an answer, consists of the "summons, with the affidavit or proof of service; the complaint with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment." All of these here appear on the judgment roll. Thus, appellant cannot, legally, collaterally attack that judgment. Moreover, most of the points raised on this appeal are simply a rehash of points raised on the other two appeals and held to be without merit. They need not be reconsidered. The other points are so obviously without merit that further discussion is unnecessary.

If it were not for the point relating to service of the summons while appellant was in attendance in the Municipal Court in San Francisco (which, while without merit, is reasonably debatable), this court would be inclined to hold that these appeals are frivolous and to impose an appropriate penalty. ■ While appellant is appearing in propria persona, that affords no excuse for permitting him to abuse the legal processes. A litigant appearing in propria persona is entitled to the same, but no greater, consideration than other litigants and attorneys.

The orders appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 22, 1956, and appellant's petition for a hearing by the Supreme Court was denied July 18, 1956.